# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GERALD PADALECKI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-08-CA-351-XR |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## ORDER ON MAGISTRATE JUDGE'S MEMORANDUM & RECOMMENDATION

On this date, the Court considered the United States Magistrate Judge's Memorandum and Recommendation in the above-numbered and styled case (Docket Entry No. 19). After careful consideration of the Memorandum and Recommendation and Defendant's objections, this Court ACCEPTS the Magistrate Judge's recommendation to remand the case for further proceedings.

### Background and Procedural History

Plaintiff, Gerald Padalecki was born on June 9, 1951, and has a college education with past work experience as a tax accountant and a corporate tax supervisor. (Tr. 65.) He applied for Title II disability benefits on March 23, 2005, claiming that a heart condition, enlarged prostate, chronic obstructive pulmonary disease (COPD), Barrett's esophagus, amyloidosis, hypertension, gastroesophageal reflux disease (GERD), a lower-back herniated disc, and a pacemaker limited his ability to work and rendered him disabled beginning on June 15, 2001. (Tr. 50–51.) Padalecki's application was denied initially on June 9, 2006, and upon reconsideration, it was again denied on

August 9, 2005. (Tr. 26.) A hearing was held on February 15, 2007, before Administrative Law Judge (ALJ) David R. Wurm. (Tr. 26.) ALJ Wurm issued his decision on May 25, 2007, denying Padalecki benefits. (Tr. 32.) The Appeals Council denied a request for review, making ALJ Wurm's decision the final decision of the Social Security Commissioner. (Tr. 4.) Padalecki appealed to this Court on May 29, 2008.

The ALJ determined that Padalecki was not disabled using the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). At step one of the evaluation process, the ALJ determined that Padalecki had not engaged in substantial gainful activity since June 15, 2001. (Tr. 28.) At step two, the ALJ determined that Padalecki's medical conditions of neurocardiogenci syncope and deodenal amyloid were severe impairments but that the medical conditions of Barrett's esophagus, history of iron deficient anemia, lumbar degenerative disc disease, and hypertension were not severe impairments because they "impose[d] no significant limitations on work activity, cleared spontaneously, or are controlled with medical management." (Tr. 28.) At step three, the ALJ determined that Padalecki's impairments did not meet or medically equate to one of the listed impairments in the Code of Federal Regulations. (Tr. 29); *see* 20 C.F.R. §§ 404.1520(d), .125, .1526. The ALJ concluded that Padalecki possessed a residual functional capacity "to perform a wide range of sedentary exertion work." (Tr. 29.) The ALJ utilized this residual functional capacity determination in step four to ultimately conclude that Padalecki "is capable of performing [his] past relevant work as a tax accountant." (Tr. 31.) The ALJ noted that the Dictionary of Occupational Titles labels work as a tax accountant as sedentary work and was therefore compatible with Padalecki's residual functional capacity. (Tr. 31–32.) This determination, that Padalecki was capable of performing his past relevant work, led to the ALJ's decision that he was not disabled as

defined by the Social Security Act and therefore not entitled to benefits. (Tr. 32.)

Padalecki filed a brief with this Court arguing that the ALJ failed to use the appropriate standard at step two of the evaluation process when he determined that certain medical conditions were not severe. Padalecki argued that an impairment is not severe if it is a slight abnormality and has no more than a minimal effect on an individual and no effect on the individual's ability to perform work-related activities irrespective of age, education, and work experience. He argued that the ALJ failed to consider whether his impairments met or equaled a listing for the digestive tract at step three of the process. He argued further that the ALJ improperly evaluated the opinion of his treating physician Dr. Jackson, and failed to perform an individualized assessment when determining residual functional capacity.

## Magistrate Judge's Memorandum & Recommendation

The Magistrate Judge agreed with Padalecki that the wrong standard was applied by the ALJ when he determined at step two that certain medical conditions—Barrett's esophagus, the history of iron deficient anemia, lumbar degenerative disc disease, and hypertension—were not severe.[1] Pursuant to the standard established in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), "[a]n impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 The Magistrate Judge concluded that the proper standard does not allow for any interference with a claimant's work ability, and if there is interference with the ability to work, then the impairment is severe. The Magistrate Judge noted that the standard applied by the ALJ was whether the impairment or impairments

---

[1] Mem. & Recommendation, Feb. 3, 2009 (Docket Entry No. 19).

"significantly limit[ed] an individual's ability" to work. The Magistrate Judge further determined that application of an improper standard was legal error requiring remand.

**Objections to the Memorandum & Recommendation**

The Commissioner objected[2] to the Magistrate Judge's recommendation for remand arguing that the correct severity standard was applied at step two and that, regardless, the step two analysis was immaterial because the ALJ made a decision based on step four of the analysis. The Commissioner asserts that the language used by the ALJ is not critical; it is the standard applied that matters. He argues that in this case, although the language was not verbatim, the correct standard was applied. The Commissioner notes that the ALJ cited to a social security ruling, which contains the proper severity language. *See* Soc. Sec. Rul. 85-28 (1985). The Commissioner contends that the relevant language of the standard is "slight impairment" and that some interference with ability to work is permissible if it is slight. The Commissioner further argues that a step-two analysis is a means of summarily disposing of cases with slight abnormalities without going on to a full evaluation of vocational factors at steps four and five. When, as here, the analysis proceeds to step four or five, all impairments, whether they be deemed severe or not, are considered to determine if the claimant is capable of engaging in substantial gainful activities. Thus, because a full evaluation of Padalecki's ability to engage in substantial gainful activities was done, and his case was not summarily disposed of at step two, the step-two analysis is irrelevant.

---

[2]Def.'s Objections to the Magistrate Judge's Mem. & Recommendation, Feb. 17, 2009 (Docket Entry No. 21).

**Jurisdiction**

This Court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. § 405(g).

**Legal Standard**

When a party objects to the Magistrate Judge's Report and Recommendation, the Court conducts a *de novo* review. 28 U.S.C. § 636(b)(1). A denial of disability benefits by the Commissioner is reviewed by the Court narrowly to determine only whether substantial evidence supports the denial and whether the proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Loza v. Apfel*, 219 F.3d 378, 389 (5th Cir. 2000). The dispute in this case involves the application of a legal standard and thus falls within the scope of review.

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). A court must examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner when evaluating the Commissioner's findings. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Villa*, 895 F.2d at 1021. Conflicts in the evidence and

credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez*, 64 F.3d at 174.

## Analysis

The legal standard applicable at step two of the evaluation process in the Fifth Circuit was set out in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101(quoting *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984)). After adopting this as the standard to be applied to a severity determination, the Court stated that unless the *Stone* opinion itself, another opinion with the same effect, or an express statement of this standard is referenced, then an assumption that the wrong standard was applied by the ALJ and Appeals Council would arise. *Id.* at 1106. Further, the Fifth Circuit stated that "unless the correct standard is used, the claim must be remanded." *Id.*

The ALJ in this case did not cite to the *Stone* opinion or any other similar opinion and stated that an impairment was not severe if it "would have no more than a minimal effect on an individual's ability to work," thus some interference with the ability to work was permissible. *Stone* does not allow for any interference with work ability, not even minimal interference. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work."). The failure to cite *Stone* or an equivalent opinion combined with the variance in language compels this Court to conclude that the ALJ applied the incorrect severity

standard.³ Failure to apply the proper *Stone* standard is a legal error requiring that the claim be remanded.⁴ *Id.* at 806–07 ("The Fifth Circuit left the lower courts no discretion to determine whether such an error was harmless. Rather, the court mandated that '[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration.'" (quoting *Stone*, 752 F.2d at 1106 (emphasis added))).

The Commissioner's argument that application of the incorrect severity standard at step two of the evaluation process is irrelevant when the ALJ proceeds to and disposes of the case at steps four or five of the evaluation process is unsupported by case law.⁵ The Commissioner cited to *Chaparro v. Bowen*, 815 F.2d 1008 (5th Cir. 1987), and *Jones v. Bowen*, 829 F.2d 527 (5th Cir. 1987), for this proposition. The language in these cases is not controlling. In *Chaparro*, the petitioner waived the issue because he failed to raise it before the court. *Chaparro*, 815 F.2d at

---

³The Court recognizes that "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Hampton v. Bowen*, 785 F.2d 1308, 1310 (5th Cir. 1986). This is not the case here, where the language indicates that the ALJ did not apply the correct legal standard. *See id.*

⁴Moreover, citation to the Social Security Regulation alone does not alleviate the concern that the incorrect legal standard was applied. (*See* Tr. 27).

⁵*Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988), and *Shipley v. Secretary*, 512 F.2d 934, 935 (5th Cir. 1987), contain language that could be construed to support this proposition. However neither case addressed the application of an incorrect legal standard. In *Harrell*, the claimant did not challenge the ALJ's application of the *Stone* standard of severity, but rather the ALJ's disregard for claimant's allegations of pain. In *Shipley*, the claimant alleged that the ALJ's decision was not supported by substantial evidence, and the court disposed of the case by saying that substantial evidence did support the ALJ's determination.

Both *Harrell* and *Shipley* state that the proper scope of review is limited to a determination of whether substantial evidence supports the ALJ's decision. Later Fifth Circuit cases include within the scope of review a determination of whether the proper legal standards were applied, as well as whether substantial evidence supports the decision. *See, e.g., Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

1011. In *Jones*, the statement was in a brief footnote not central to the Court's analysis of the case.[6] *Jones*, 829 F.2d at 527. The Fifth Circuit in *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000), held that application of an incorrect standard at step two was cause for remand.[7] *Id.* at 391–92. Moreover, this Court has stated that proceeding past step two of the evaluation process does not make the application of an incorrect severity standard irrelevant. *See Gonzales-Sargent v. Barnhart*, No. SA-06-CV-355-XR, 2007 WL 1752057, at *18 (W.D. Tex. June 15, 2007) ("[I]t is possible for a case to be remanded even if the ALJ moved beyond the second step of the evaluation process.").

## Conclusion

Application of the incorrect standard at step two of the evaluation process was a legal error. The Court ACCEPTS the Memorandum and Recommendation of the Magistrate Judge and REMANDS this case for further consideration consistent with this opinion.

It is so ORDERED.

SIGNED this 1st day of March, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[6] The Court proceeded under the scope of review limited to the substantial evidence review discussed *supra* note 5.

[7] While this case had two holdings, one requiring remand for failure to apply the correct *Stone* standard at step two and the other remanding for lack of substantial evidence, the holding regarding the *Stone* standard is not diminished by this fact.